IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 22-cr-00211-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. RONALD PHILIP WALLACE,
   and
2. STACE YATER WALLACE,

    **Defendants.**

---

### RESPONSE TO DEFENDANTS' MOTION OBJECTING TO MISJOINDER OF COUNTS ARE TO SEVER COUNTS [ECF 37]

---

The United States of America, by and through Robert Brown, Assistant United States Attorney, responds to the defendant's Objection to the Joinder of counts 41 - 44 with counts 1 - 40 and Motion to Sever [ECF 37].

The indictment charges Ronald Philip Wallace with nine counts (counts 1 – 9) of wire fraud relating to an alleged investment fraud scheme relating to companies with which he was associated [see ECF 1, ¶ 2-3]. Both defendants are charged with 41 counts of money laundering allegedly involving proceeds of the wire fraud (counts 10 – 40). Counts 41 – 44 charge four counts of bank fraud relating to Paycheck Protection Program (PPP) loan applications allegedly made by the defendants on behalf of NATURLFX Inc.[1]

The defendants seek severance of the PPP bank fraud counts from the other counts because (1) the bank fraud counts allege facts "separate and unrelated in

---

[1] As the defendants point out in their motion NATURLFX Inc. (the borrower identified in counts 41-44) was a successor corporation of LiPro, one of the companies which was allegedly a vehicle of the investment fraud committed by Ronald Wallace alleged in counts 1 – 9 [see ECF 37, ¶ 1].

character" to the investment fraud/money laundering counts; (2) are not based on the same acts or series of acts; (3) are not connected to a common scheme or plan; and (2) the bank fraud counts allegedly occurred in 2020 and 2021, and the other counts are alleged to have occurred between 2014 and 2019 [ECF 37, ¶¶ 6, 7].

The government submits the counts were properly joined and that a severance is unnecessary as there are other protections the court can implement to address any perceived potential prejudice

## I.  FACTUAL BACKGROUND

As noted in footnote one, the defendants agree there is a connection between the primary vehicle of the investment fraud, LiPro, and the vehicle for the bank fraud counts, NATURLFX, Inc.  While this aspect of the case is likely a sufficient factual predicate for the court to properly consider the defendants' motion, the government will provide some evidentiary context for the court's consideration recognizing that such are allegations.

The fraud allegedly perpetrated by Ronald Wallace, and the subsequent laundering of funds by both defendants, was facilitated by the creation of various limited liability companies and corporations for the purported purpose of producing, marketing and selling cannabidiol ("CBD") capsules and other related products.  Allegedly, Ronald Wallace devised a scheme to defraud investors by providing them with false information to induce them to invest.  Investors wired investments to Wallace controlled accounts from various parts of the country and from Canada. Wallace induced investors into investing in his CBD business by making representations to potential investors concerning the financial condition of the business, the operation of the business, the market for the product and existing orders and future orders for the product.  One

representation was that what he was selling was better than any other type of CBD product which would make investing with his business lucrative. While many representations could be considered "puffing," Wallace made specific representations concerning sales figures and accounts receivable which were demonstrably false. He represented that he had contracts for sale from certain vendors worth hundreds of thousands of dollars for a specific amount of product when all he really had from those vendors was an agreement to attempt to sell his product on a consignment basis. Demonstrably false sales figures and accounts receivable which were provided to potential investors.

Throughout the time-period covered, the name of the entity through which Wallace solicited investors and purported to run the business varied. Investors provided money to each of the various companies set forth below, except for Sophic Solutions. For each of the below companies, employees and investors were told that Stace Wallace, was the CEO and owner of the companies. However, the companies were primarily operated by Ronald Wallace.

<u>The companies referenced in the indictment</u>.

Sophic Solutions was incorporated on April 12, 2016. Stace Wallace was listed as the registered agent. The primary business address was a P.O. Box associated with the defendants.

BD Cann, LLC was created on May 17, 2017. The primary business address was the Wallace residence. At least one investor provided his investment funds to BD Cann based on Wallace's representations.

Fource Management, LLC was incorporated on November 28, 2017. The

registered agent is listed as Stace Hellman.  The primary business address was a P.O. Box associated with the Wallace's.

LiPro, LLC was incorporated on January 22, 2018.  The primary business address was the Wallace residence.  On May 31, 2018, the company name was changed to LiPro, Inc.  Stace Wallace was the registered agent.  The incorporator was a person who had been a short time employee of LiPro, who indicated that she submitted the Secretary of State documents as part of her employment duties.  On August 13, 2019, Lipro, Inc., filed an entity name change notice with the Colorado Secretary of State.  The new name was NATURLFX, Inc., which was incorporated on the same day.

The indictment alleges wire transfers representing wire transfers of funds from investors to the various companies occurred between November 2017 and July 2019 [ECF 1, ¶ 4].  The indictment alleges money laundering transactions occurring between November 2017 and May 2019 [ECF 1, ¶ 5].

In May 2020, Stace Yater-Wallace, acting on behalf of NATURLFX, Inc., applied for a PPP loan with Vectra Bank.  She represented the company was partly owned by Sophic Solutions, Inc., and had been in existence since May 31, 2018, the date of the creation of LiPro.  Misrepresentations were allegedly made relating to the company's existence itself, its status as a seasonal company and to the number of employees of the company and their pay for relevant periods of 2019 and 2020, pre-covid.  As a result of the application, approximately $120,000 was provided in two draws on the loan.  In 2021, the company, by Yater-Wallace, applied to the same bank for a supplemental loan and submitted documentation which was allegedly false.

## II.  LEGAL AUTHORITY AND ARGUMENT

All counts are properly joined.  Rule 8(a) of the Federal Rules of Criminal Procedure governs the joinder of offenses:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged…are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

"Rule 8 is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995).

The crimes alleged in counts 1 – 44 are of a similar character (fraud relating to business entities maintained by and/or operated by the defendants) and involve false representations about companies controlled by the defendants.  Accordingly, the analysis centers on whether the charges should be severed pursuant to Fed. R. Crim. P. 14(a).  *See United States v. Thomas*, 752 Fed.App'x. 606, 609 (10th Cir. 2018).  Rule 14(a) permits the court to sever offenses if joinder "appears to prejudice a defendant or the government." *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009).

Prejudice for Rule 14(a) purposes means "actual prejudice." *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009).  A district court should grant severance under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Rule 14 "leaves the determination of risk of prejudice and any remedy for such prejudice to the sound discretion of the district court," *United States v. Morales,* 108 F.3d 1213, 1220 (10th Cir. 1997), and "[a] defendant seeking to vacate a conviction based upon the denial of a

motion to sever faces a steep challenge," *Pursley,* 577 F.3d at 1215; *see also United States v. Wardell,* 591 F.3d 1279, 1299 (10th Cir. 2009).

"The defendant bears a heavy burden of showing real prejudice from the joinder of the two counts." *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir.1994) (citations and quotations omitted). To establish "real prejudice, the defendant must demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials." *Id*. (citation and quotations omitted). Finally, joint trials promote economy and efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

### A. Severance is not warranted because a joint trial does not prejudice the defendants.

The defendants make no specific claim of prejudice from joinder. For example, neither describes a situation where either may want to testify concerning one set of offenses but not the other. *See. United States v.* Gardner, 955 F.2d 1492, 1497 (11th Cir. 1992). The defendants express a general fear that the joinder of what appears to be unrelated charges would cause a jury to convict on either or both sets of charges because of the propensity established by evidence presented on the other set of charges. As a general rule, neither "a mere allegation that defendant would have a better chance at acquittal in a separate trial" nor an argument that evidence would have a "spillover effect" demonstrates prejudice. *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005). *See also Zafiro*, 506 U.S. at 540 ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance at acquittal in separate trials.").

The evidence in this case is "overlapping and intertwined." *Morales,* 108 F.3d at

1220. Regarding the investment fraud and money laundering aspects of the case, there will be evidence concerning LiPro's manufacture or obtaining of CBD (or lack thereof) and the marketing of CBD.  Testimony from former employees of LiPro and the Wallace's will be elicited.  This testimony will be descriptive of the Wallaces' business model and how the companies were operated.  Because the allegations of the bank fraud loan applications involved the successor to LiPro, NATURALFX, the loan applicant, there will be testimony of those same individuals relating to their employment or lack of employment at NATURALFX.  That testimony will also relate to the fact that Lipro, or NATURALFX was not a seasonal company.  The evidence relating to both aspects of the indictment would be redundant in two trials.

      Furthermore, any potential prejudice can be mitigated.  The district court will direct the jurors to consider the evidence underlying each count independently.  The defendants have not alleged with any specificity why a jury would not be able to consider the charges and the underlying evidence independently.  *See Jones*, 530 F.3d at 1302 (rejecting spillover argument where defendant offered no explanation of his theory that jurors could not be expected to separate evidence of different charges against him).  The Supreme Court has established that "limiting instructions often will suffice to cure any risk of prejudice" that may result from a joint trial.  *Zafiro*, 506 U.S. at 539.  Similarly, the Tenth Circuit has made clear that "as a general rule, we presume that juries follow [limiting] instructions." *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989); *see also United States v. Thomas*, 849 F.3d 906, 912 (10th Cir.), *cert denied*, 138 S.Ct. 315 (2017) ("limiting instructions are ordinarily sufficient to cure potential prejudice." (Internal quotation marks

omitted)).  Because it is presumed that a jury will follow limiting instructions, there is no reason to conclude that a jury will not also be able to capably sort out the evidence as to each set of allegations and counts.  Thus, a joint trial is proper, and the defendants have failed to meet their heavy burden to demonstrate prejudice sufficient to warrant severance.

> **B.** **Judicial economy justifies a joint trial in the absence of any prejudice.**

As detailed above, the defendant is not prejudiced by a joint trial.  Should the defendants have two separate fraud trials, the government and the Court would duplicate significant efforts in re-presenting much of the same evidence already presented in the first trial.  *See United States v. Adams*, 418 Fed. Appx. 688, 692 (10th Cir. 2011) (any prejudice that may have been shown "would not outweigh the cost of saddling the court, parties, and witnesses with separate trials requiring presentation of repetitious evidence and testimony.").  Given the volume of evidence in this case, and the lack of prejudice to the defendants, judicial economy is best served in having one trial.

> **C.** **Other PPP fraud severance cases.**

While the COVID crisis is thankfully over, issues raised by the Department of Justice efforts to address the pandemic of fraudsters manipulating the effort of the United States government to provide immediate relief to businesses have not yet reached many appellate circuits. However, some district courts have addressed the severance issue raised by the defendants herein.  At least two district courts have denied severance motions based on arguments similar to the defendants here.

In *United States v. Frazier*,  2022 U.S. Dist. LEXIS 130409 (July 22, 2022) in Alabama, four defendants were charged with varying counts of wire fraud, structuring, money laundering, false tax returns and defrauding the SBA in a PPP loan application.

The first four categories of counts had nothing to do with the SBA count as a separate fraud was alleged.  The only relation of the SBA count was that the proceeds of that fraud were deposited into an account where other fraudulently obtained funds were deposited, laundered, structured and properly reported and subject to taxation.  The court ruled the SBA fraud need not be severed as the evidence of the repository of the funds were sufficiently tied to the other fraudulently obtained funds and the evidence at separate trials would be largely the same.

In *United States v. Bicher*, 2023 U.S. Dist. LEXIS 38399 {S.D.N.Y. March 7, 2023) a defendant was charged with wire fraud involving a scheme to defraud New York landlords relating to wholesale breaking of lease agreements.  A second count charged the same defendant with a separate wire fraud involving a false PPP application and loan.  While the schemes were clearly different, the court denied the motion to sever based upon the fact that, as here, 'both [schemes] relate to defendant's control over companies that rented apartment units on a short-term basis. There appears to be some overlap in the companies involved across the two schemes, as well as the bank accounts where the proceeds were sent. The schemes, therefore, have a 'general likeness' sufficient to satisfy the 'liberal standard' of Rule 8(a) and [*United States v.] McGrath,* 558 F.2d 1102, 1106 (2nd. Cir. 1977)."  slip op., p. 2.

## CONCLUSION

The defendants have failed to meet their burden of demonstrating any prejudice in a joint trial for all counts, and their motion to sever should be denied.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: *s/Robert Brown*
ROBERT BROWN
Assistant United States Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
E-mail: Robert.brown5@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on June 2, 2023, I electronically filed **RESPONSE TO DEFENDANTS' MOTION OBJECTING TO MISJOINDER OF COUNTS ARE TO SEVER COUNTS [ECF 37]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties on record.

                                     *s/Robert Brown*
                                     ROBERT BROWN
                                     Assistant United States Attorney