IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00211-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    RONALD PHILIP WALLACE,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Timothy Neff and Nicole Cassidy, Assistant United States Attorneys for the District of Colorado, and the defendant, Ronald Philip Wallace, personally and by counsel, Ronald Gainor and Lynn Pierce, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.    AGREEMENT

**A.**    **Defendant's Agreement:**

The defendant agrees:

(1)    to plead guilty to **Counts 9** and **43** of the Amended Indictment (ECF No. 67), charging violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1344 (Bank Fraud), respectively;

(2)    to waive certain appellate and collateral attack rights, as explained in detail below;

**COURT EXHIBIT 1**

(3) to be liable for restitution in the amount of $731,513.38[1], as more fully described below; and

(4) agree not to contest forfeiture as more fully described below; etc.

**B.    Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado concerning: (1) investment fraud concerning Lipro Inc. and related cannabidiol companies and; (2) fraud against government programs described below. The government further agrees to move to dismiss Counts 1–8, 10–42, and 44 of the Amended Indictment with prejudice, against this defendant only. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b). If the defendant engages in conduct which implicates USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, in addition to any other

---

[1] This restitution calculation includes: (1) $483,000 of restitution payments to investors of the CBD Companies, as described more fully below; and (2) $248,513.38, which is comprised of the total amount that the SBA paid to BANK 1 when it repurchased NaturlFx Inc.'s PPP loans pursuant to the PPP loan guaranty ($236,836.08) and PPP processing fees paid by the SBA to BANK 1 for underwriting and processing the PPP loans ($11,677.30).

consequences, the government will be released from its obligations under the plea agreement, and the defendant will not thereby have any right to withdraw from the plea agreement.

The government further agrees to recommend a sentence at the low-end of the applicable guideline range for the criminal history and a total offense level calculated by the Court at sentencing. The parties understand that this agreement is not binding on the Court.

**C.     Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)   the sentence exceeds the maximum sentence provided in the statutes of conviction, 18 U.S.C. §§ 1343 & 1344;

(2)   the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of **16**; or

(3)   the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision

does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

    (1)    the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

    (2)    the defendant was deprived of the effective assistance of counsel; or

    (3)    the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D.**    **Forfeiture of Assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, the

defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: a money judgment in the amount of the proceeds of the offenses of conviction, which is $546,546.[2] The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offenses, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met. The defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of

---

[2] This amount includes: (1) investment proceeds totaling $313,000; and (2) NaturlFx Inc.'s PPP loans totaling $233,546 (which does not include PPP processing fees or interest).

whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II. ELEMENTS OF THE OFFENSES

A. <u>Count 9 (Wire Fraud, 18 U.S.C. § 1343)</u>

The parties agree that the elements of Count 9 (Wire Fraud, 18 U.S.C. § 1343) are as follows:

    A.    The defendant devised or intended to devise a scheme to defraud, as alleged in the Amended Indictment;

    B.    The defendant acted with specific intent to defraud;

    C.    The defendant used, or caused another person to use, interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

    D.    The scheme employed false or fraudulent pretenses, representations, or promises that were material.[3]

B. <u>Count 43 (Bank Fraud, 18 U.S.C. § 1344)</u>

The parties agree that the elements of Count 43 (Bank Fraud, 18 U.S.C. § 1344) are as follows:

    A.    The defendant knowingly executed or attempted to execute a scheme or artifice to defraud BANK 1 by means of false or fraudulent pretenses, representations, or promises;

    B.    BANK 1 was a financial institution within the meaning of the law;

---

[3] Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2021 Edition, § 2.57.

      C.      The defendant acted with the intent to defraud a financial institution; and

      D.      The false or fraudulent pretenses, representations, or promises that the defendant made were material, meaning that they would naturally tend to influence, or were capable of influencing the decision of BANK 1.[4]

### III.   STATUTORY MAXIMUM SENTENCE

The maximum penalties for a violation of Count 9 (Wire Fraud, 18 U.S.C. § 1343) of the Amended Indictment are: not more than 20 years' imprisonment, a fine of not more than $250,000, or both; not more than 3 years' supervised release; a $100 special assessment fee; plus, restitution and forfeiture in an amount to be determined at sentencing.

The maximum penalties for a violation of Count 43 (Bank Fraud, 18 U.S.C. § 1344) of the Amended Indictment are: not more than 30 years' imprisonment, a fine of not more than $1,000,000, or both; not more than 5 years' supervised release; a $100 special assessment fee; plus, restitution and forfeiture in an amount to be determined at sentencing.

### IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To

---

[4] Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2021 Edition, § 2.58.

the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct.

A. **Wire Fraud Relating to the CBD Companies (Count 9):**

Between at least 2017 and continuing through at least August 2019, the defendant and others operated companies involved in the production and sale of various cannabidiol ("CBD") products. These companies include BD Cann, LLC, Fource Management LLC, Lipro LLC, and Lipro Inc. (which later changed its name to NaturlFx Inc.) (collectively, the "CBD Companies"). At all relevant times, the defendant resided in the State and District of Colorado.

In order to induce individuals to invest in the CBD Companies, the defendant and others made materially false statements and certifications to those potential investors regarding, *inter alia*, the companies' financial condition, past sales, and accounts receivables. Based on the defendant's and others' materially false representations, the following investors provided funds to the CBD Companies for the purpose of funding the production and marketing of CBD products:

| Investor | Date | Amount | Deposited to Account | Related Count in the Amended Indictment |
|---|---|---|---|---|
| S.C. | 11/9/2017 | $33,000 | BD Cann, Vectra x2990 | 1 |
| S.C. | 1/21/2018 | $80,000 | Fource Management, | 2 |

|      |           |           | Vectra x3097        |   |
|------|-----------|-----------|---------------------|---|
| T.H. | 5/10/2019 | $150,000  | Lipro, JPMC x9101   | 8 |
| M.C. | 7/3/2019  | $50,000   | Lipro, JPMC x9101   | 9 |
|      | **Loss Attributable to the Defendant** | **$313,000** | | |

The parties agree that the defendant and others caused the investments identified above to be transmitted by means of wire communications in interstate commerce for the purpose of executing the wire fraud scheme. The parties further agree that the investments identified above—totaling $313,000—should be included within the defendant's loss calculation.

However, after carefully considering the timing and nature of the defendant's communications with investors E.W. (Count 3), W.N. (Count 4), and N.C. (Counts 5–6), the government respectfully submits that it cannot meet its burden of proof beyond a reasonable doubt that the defendant acted with a specific intent to defraud with respect to these investors or that the defendant made materially false statements to these investors that induced their investments in the CBD Companies. The government further submits that it similarly cannot meet its burden of proof beyond a reasonable doubt that the defendant made materially false statements that induced T.H.'s $50,000 loan (Count 7). Accordingly, the parties agree that the financial transactions charged in Counts 3–7 of the Amended Indictment should not be included in the calculation of the defendant's loss.

Nonetheless, pursuant to 18 U.S.C. § 3663(a)(3) and as a condition of this Plea Agreement, the defendant has agreed to pay restitution in the amount of $483,000 to the investors named in Counts 1–4 and 7–9 of the Amended Indictment.[5]

---

[5] The defendant has not agreed to pay restitution to N.C. (Counts 5–6).

### B.     COVID-19 Loan Fraud (Count 43)

Background about the PPP Program under the CARES Act

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which provided emergency assistance, administered by the Small Business Administration ("SBA"), to small business owners suffering adverse economic effects caused by the Coronavirus ("COVID-19") pandemic. The CARES Act established several new temporary programs and expanded existing programs, including the Paycheck Protection Program ("PPP"), which provided forgivable loans to small businesses. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, mortgage interest payments, and utilities. The CARES Act mandated that only businesses in operation on February 15, 2020 were eligible for a PPP loan.

To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications. The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the loan amount that the business was eligible to receive under the PPP. Businesses were also required to provide documentation showing their payroll expenses.

PPP loan applications were received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, but the loans were guaranteed by the SBA. Data from the

Page 10 of 15

application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. The SBA paid participating lenders a processing fee for each funded PPP loan.

Additionally, in the event that the borrower defaulted on its PPP loans, the SBA agreed that it would purchase a PPP loan from the lender and pay the loan's outstanding principal balance and accrued interest.

NaturlFx Inc. PPP Loans

From May 2020 through at least February 2021, the defendant, knowingly and with the intent to defraud, prepared and caused fraudulent PPP applications for NaturlFx Inc. to be submitted to BANK 1, an approved third-party lender of PPP loans (hereinafter, the "PPP Scheme"). In these PPP applications, the defendant caused materially false statements and certifications to be made regarding, *inter alia*, the businesses' average monthly payroll and number of employees. Moreover, despite the requirement that all PPP funds be used to pay NaturlFx Inc.'s eligible business expenses, the defendant intended to—and did—use the proceeds for his personal benefit and for other business ventures.

At all times relevant to the PPP Scheme, BANK 1 was a financial institution within the meaning of the law, and the defendant resided in the State and District of Colorado.

As set forth in the chart below, BANK 1 approved and funded first and second draw PPP loans for NaturlFx Inc. in the aggregate amount of $233,546. The SBA also paid $11,677.30 in processing fees to the BANK 1 for underwriting and servicing these PPP loans. After NaturlFx Inc. failed to repay the PPP loans, the SBA repurchased the PPP loans' outstanding principal balance and accrued interest.

| PPP Loan Number | Borrower Name | Loan Amount | PPP Processing Fee | Guaranty Purchase Amount | Restitution |
|---|---|---|---|---|---|
| 9576067408 | NaturlFx Inc. | $120,054.00 | $6,002.70 | $121,512.66 | $127,515.36 |
| 2643648509 | NaturlFx Inc. | $113,492.00 | $5,674.60 | $115,323.42 | $120,998.02 |
| | Totals | $233,546.00 | $11,677.30 | $236,836.08 | $248,513.38 |

The parties agree that the reasonably foreseeable pecuniary harm that resulted from the PPP Scheme is $233,546, which represents the total amount of NaturlFx's PPP loans. The parties further agree that the loss amount from the COVID-19 loan fraud scheme of $233,546 is to be included as part of relevant conduct pursuant to USSG § 1B1.3, and therefore, such amount is to be included in the defendant's overall loss calculation under USSG § 2B1.1(b)(1).

The defendant further understands and agrees that he has an obligation to pay restitution to the SBA in the amount of $248,513.38. This amount includes the principal loan amounts that the defendant received in connection with NaturlFx's PPP loans, the accrued interest paid by the SBA to BANK 1 in connection with the PPP loans, and the PPP processing fees paid by the SBA to BANK 1 for underwriting and servicing the PPP loans.

C.  **Acceptance of Responsibility**

The defendant accepted responsibility for his conduct in a timely fashion.

## VI.     ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the

Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a) Under Section § 2B1.1(a)(1), the base offense level is 7.

b) A 12-point enhancement applies because the ~~defendant's~~ loss was more than $250,000 and less than $550,000. § 2B1.1(b)(1)(G) ($313,000 for the wire fraud scheme + $233,546 for the bank fraud scheme = total loss amount of $546,546).

c) The adjusted offense level is 19.

d) The defendant should receive a 3-level downward adjustment for timely acceptance of responsibility. The resulting total offense level is **16**. §§ 3E1.1(a)–(b).

e) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in **criminal history category II**.

f) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

g) The advisory guideline range resulting from these calculations is **24–30 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from **21 months** (bottom of Category I) to **57 months** (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

      h)      Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be **$10,000 to $95,000,** plus applicable interest and penalties.

      i)      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 2 years, but not more than 5 years.

      j)      Pursuant to guideline § 5E1.1(a)(1) and 18 U.S.C. § 3663(a)(3), the parties agree that the defendant shall pay restitution in the amount of $731,513.38.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

    // 

    // 

    // 

    // 

    //

## VII.  ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 11-7-24

Ronald Philip Wallace
Defendant

Date: 11-7-24

Ronald Gainor
Attorney for Defendant

Date: 11-7-24

Lynn Pierce
Attorney for Defendant

Date: 11-7-24

Timothy Neff
Assistant U.S. Attorney

Date: 11/7/2024

Nicole Cassidy
Assistant U.S. Attorney

Page 15 of 15